IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE ANN FUGES, on behalf of herself and all others similarly situated, Plaintiff, | : : : : | CIVIL ACTION |
| v. | : : | |
| SOUTHWEST FINANCIAL SERVICES, LTD., Defendant. | : : | NO. 2:09-cv-00699 |

MEMORANDUM ORDER

AND NOW, this 21st day of November, 2011, upon consideration of (1) Motion of Defendant Southwest Financial Services, Ltd. for Summary Judgment (Doc. No. 47), (2) Plaintiff Marie Ann Fuges' Response to Defendant Southwest Financial Services, Ltd.'s Purportedly Uncontested Facts and Plaintiff's Counter-Statement of Material Facts (Doc. No. 52), (3) Plaintiff's Response in Opposition to Defendant Southwest Financial Services, Ltd.'s Motion for Summary Judgment (Doc. No. 53), (4) Defendant's Response to Plaintiff's Counter-Statement of Material Facts (Doc. No. 61), and (5) Reply Brief in Support of Defendant's Motion for Summary Judgment (Doc. No. 62), it is hereby ORDERED that Defendant's Motion for Summary Judgment (Doc. No. 47) is GRANTED.

The Clerk of Court is directed to close this matter for statistical purposes.

I.  Factual Background and Procedural History[1]

At bottom, this dispute concerns the proper application of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, to Defendant Southwest Financial Services' ("Defendant"

---

[1] Because this matter comes before us on Defendant's motion for summary judgment, we set forth the undisputed facts drawing all justifiable inferences in favor of Plaintiff, Marie Ann Fuges, the non-movant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (remarking that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" in resolving motions for summary judgment).

or "Southwest") business, particularly to its so-called "current owner reports." As discussed in detail below, we conclude that no jury could reasonably find that Southwest *willfully* violated the FCRA, given the FCRA's ambiguity with respect to Southwest's business model and the extraordinary dearth of relevant judicial and agency guidance. Therefore, we grant Southwest's motion for summary judgment.

We begin with the facts. In early November of 2008, Plaintiff Marie Ann Fuges sought to increase her outstanding home equity line of credit (HELOC) and to purchase payment protection insurance on this credit line from PNC Bank. (Doc. Nos. 47 and 52, ¶¶ 1-5). PNC Bank subsequently obtained a report dated November 13, 2008, and entitled "In Re: Marie Fuges" from Defendant Southwest Financial Services. (Doc. No. 44 Ex. A). The two-page Southwest report contains four (4) sections: Deeds; Mortgages; Parcel Number and Taxes; and Lien Information. (Doc. No. 44 Ex. A). Under the "Parcel Number and Taxes" section, the report notes a delinquency of $111.11. (Doc. No. 44 Ex. A). Additionally, under the "Lien Information" section, the report lists a judgment against "Robert W. Fuges" in the amount of $2,923.63. (Doc. No. 44 Ex. A). The report does not include Plaintiff's social security number, payment history, employer, date of birth, account balances, or prior addresses. (Doc. Nos. 47 and 52, ¶¶ 41, 43).

Apparently relying on the information in the Southwest report, PNC Bank rejected Fuges' loan application because PNC was "unable to obtain...verification that real estate taxes on the collateral property are paid." (Doc. No. 44 Ex. B). Fuges contested the alleged tax delinquency with PNC and confirmed with the Philadelphia taxing authority that, in fact, she had no delinquency. (Doc. No. 52 ¶¶ 62-63). However, Fuges had not paid her 2008 Philadelphia property taxes in full by November 13, 2008, because she participated in Philadelphia's

residential property tax installment plan, under which residents pay property taxes in monthly installments throughout the year. (Doc. Nos. 47 and 52, ¶¶ 6-9).

Fuges requested a copy of the report PNC Bank used to determine that Fuges had a tax delinquency, but PNC representatives repeatedly told Fuges that the report was confidential and that she could not receive a copy. (Doc. No. 52 ¶ 7). The Southwest report itself contains the following "CAUTION TO CUSTOMER" at the bottom of the first page: "This report is released with the understanding that the information reported is strictly confidential. This report contains information from public records and is not to be construed as an opinion of title, title guarantee, or title insurance policy." (Doc. No. 44 Ex. B). Nonetheless, Fuges persisted and eventually obtained a copy of the Southwest report from PNC. (Doc. No. 52 ¶¶ 7, 64).

Regarding the "Lien Information" section of the Southwest report, the judgment shown against Robert W. Fuges references a judgment against Plaintiff's son, even though Plaintiff's son was not applying for credit with PNC Bank and had never had an ownership interest in Plaintiff's residence. (Doc. No. 52 ¶ 107). However, Southwest notes that Plaintiff's deceased husband, Robert E. Fuges, had a nearly identical name and granted the property to Plaintiff in a not-for-value transaction, so a judgment against him would have encumbered the property (Doc. No. 61 ¶ 107).

Turning to Southwest's general business model, Southwest claims to sell "current owner title reports" or "limited property reports" to banks, which utilize the reports in evaluating HELOC or second mortgage applications (Doc. Nos. 47 and 52, ¶¶ 17, 58). According to Southwest, a current owner report is a type of title report that "summarizes information from public records regarding a particular parcel of property." (Doc. No. 47 ¶ 18). However, Plaintiff maintains that Southwest's reports relate to a consumer, not a parcel of property, pointing out

that (1) Southwest titled the report in this matter "In Re: Marie Fuges," and (2) the report in question included information on a judgment against Fuges' son that was not, in fact, a "judgment lien" (Doc. No. 52 ¶¶ 18, 36, 37, 41).

Procedurally, Plaintiff brought this lawsuit on February 18, 2009, filing a purported class action complaint alleging that Southwest violated various provisions of the FCRA. (See Doc. No. 1). Plaintiff's most recent amended complaint asserts that Southwest willfully and/or negligently violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of the reports it sold, 15 U.S.C. § 1681e(b); failing to employ any procedures or personnel to assist consumers in obtaining or retrieving their credit file from Southwest, or to explain to consumers any information furnished about them, 15 U.S.C. § 1681h(c); prohibiting users of its reports from disclosing the reports' contents to consumers when adverse action is taken against the consumers based on information in the reports, 15 U.S.C. § 1681e(c); failing to obtain permissible purpose certificates for its reports, and failing to follow procedures to assure that Southwest sold its reports for permissible purposes only, 15 U.S.C. §§ 1681e(a), 1681b; and failing to provide notices to its customers regarding their responsibilities under the FCRA, 15 U.S.C. § 1681e(d).

Upon the stipulation of counsel, we permitted the parties to submit summary judgment motions prior to moving for class certification. (Doc. No. 46). Defendant Southwest filed a motion for summary judgment on August 1, 2011, essentially arguing that its business, particularly its current owner reports, are not subject to the FCRA. (Doc. No. 47). Plaintiff responded on September 12, 2011, opposing summary judgment and, notably, withdrawing its claims that Southwest negligently violated the FCRA. Specifically, Plaintiff explicitly elected to pursue only her willful violation claims and associated statutory damages. (Doc. No. 53-2, at

34).  Defendant filed a reply brief on October 12, 2011 (Doc. No. 62), and this summary judgment motion is now ripe for disposition.  As set forth below, we grant summary judgment in favor of Southwest on Plaintiff's willful noncompliance claims, the only remaining claims in this matter.

II.     Legal Analysis

Under Federal Rule of Civil Procedure 56(a), we must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Specifically, summary judgment is appropriate where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.

In passing the FCRA, Congress found that our "banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system."  15 U.S.C. § 1681(a)(1).  With that in mind, Congress passed the FCRA to ensure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."  15 U.S.C. § 1681(b).

As suggested by the aforementioned FCRA passages, the FCRA does not apply to all businesses, or even to all financial institutions. Instead, the FCRA governs "consumer reporting agencies" that furnish "consumer reports." See 15 U.S.C. §§ 1681b, 1681e, 1681h. Under the FCRA, a "consumer reporting agency" is:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of *assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties*, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f) (emphasis added).

> Relatedly, the FCRA defines "consumer report" as:
>
> any written, oral, or other communication of any information *by a consumer reporting agency* bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-- (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title [subject to various exclusions].

15 U.S.C. § 1681a(d)(1) (emphasis added).

As discussed *supra*, Plaintiff chose to pursue only her willful noncompliance claims. Under 15 U.S.C. § 1681n, "[a]ny person who willfully fails to comply" with the FCRA is liable for statutory damages "of not less than $100 and not more than $1,000," and may even face punitive damages. 15 U.S.C. § 1681n(a). The Supreme Court recently spoke on the issue of FCRA willful noncompliance in Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007). To prove a willful FCRA violation, a consumer must show that a consumer reporting agency either knowingly or recklessly violated the requirements of the Act. Id. at 56-60. Here, Fuges has not provided any evidence tending to show that Southwest knew it's actions with respect to

Fuges, or any other consumer for that matter, violated the FCRA. Rather, Southwest has steadfastly maintained that the FCRA does not cover its business model, particularly its current owner reports. Therefore, to resolve Southwest's summary judgment motion, we must determine whether a reasonably jury could conclude that Southwest recklessly violated the FCRA's requirements.

Pursuant to Safeco, "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69. In other words, even a company's erroneous reading of the FCRA does not constitute a reckless, and therefore willful, violation of the Act unless the company's reading is "objectively unreasonable." Id.

The Safeco Court discussed two factors in analyzing whether a company's interpretation of the FCRA is "objectively unreasonable." First, the Court considered the clarity of the statutory text with respect to the challenged conduct. Specifically, the fact that a company's reading of the FCRA "has a foundation in the statutory text," e.g., because the relevant statutory provision is "less-than-pellucid," favors a finding that the company acted reasonably. Id. at 69-70.

Second, the Court evaluated the amount of relevant judicial or agency guidance available to the company to aid its efforts to interpret the Act. In particular, the Safeco Court stressed that "[t]his is not a case in which the business subject to the Act had the benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took. Before these cases, no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC." Safeco, 551 U.S. at 70. This "dearth of

guidance," along with the FCRA's "less-than-pellucid statutory text," persuaded the Court to conclude that "Safeco's reading was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." Id.

The Safeco Court summed-up its guidance on the FCRA willfulness issue as follows:

> Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator. Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been.

Id. at 70 n.20. As evident from the immediately preceding passage, we must hold a company to a standard of objective reasonableness in analyzing FCRA willful violation claims, whatever the company's subjective intent. As such, post-Safeco courts routinely grant summary judgment on FCRA willful violation claims if the defendant company acted objectively reasonably in the face of unclear statutory text and insufficient pertinent authoritative guidance. See, e.g., Levine v. World Fin. Network Nat'l Bank, 554 F.3d 1314, 1318-19 (11th Cir. 2009) (affirming summary judgment in favor of Experian because "[t]he text of the Act is far from 'pellucid' that reports may not be sold for consumers whose accounts are closed....Nor have judicial opinions established that the Act forbids the sale of reports for consumers whose accounts are closed.") (internal citation omitted); Birmingham v. Experian Info. Solutions, Inc., 633 F.3d 1006, 1009-12 (10th Cir. 2011) (finding that Experian was entitled to summary judgment on FCRA willful noncompliance claims because "[t]o infer that Experian acted recklessly in response to the complaint would require inappropriate speculation."); Krajewski v. Am. Honda Fin. Corp., 557 F. Supp. 2d 596, 618 (E.D. Pa. 2008) (granting Trans Union's motion for summary judgment on FCRA willful noncompliance claims because "[b]oth decisions of federal appellate courts and FTC guidance support the conclusion that Trans Union's interpretation of the FCRA's

requirements were not objectively unreasonable."); Harper v. Trans Union, LLC, Civil Action No. 04-3510, 2009 WL 415940, at *3-4 (E.D. Pa. Feb. 19, 2009) (granting summary judgment on the willful noncompliance issue because "[n]o FTC action or appellate court decision existed at the time to warn CRAs that their procedure of including the bankruptcy remark were not reasonable or that inclusion of the bankruptcy remark would be inaccurate."); Shannon v. Equifax Info. Servs., LLC, 764 F. Supp. 2d 714, 725-26 (E.D. Pa. 2011) (granting summary judgment on FCRA willful noncompliance claims because "Equifax's approach has been upheld as a matter of law by other courts."); Sheldon v. Experian Info. Solutions, Inc., Civil Action No. 08-5193, 2010 WL 3768362, at *4 (E.D. Pa. Sept. 28, 2010) (granting summary judgment on FCRA willful violation claim, in part because no appellate authority supported plaintiff's contention).

Here, given the FCRA's lack of clarity regarding whether the Act even covers companies such as Defendant Southwest Financial Services, as well as the stunning paucity of guidance on the pertinent issues, no reasonable jury could conclude that Southwest acted objectively unreasonably in determining that the FCRA does not apply to its activities, in particular to its current owner reports such as the one at issue in this matter.

Regarding the statutory text, as discussed *supra*, the FCRA covers "consumer reporting agencies" (CRAs) that furnish "consumer reports." See 15 U.S.C. §§ 1681b, 1681e, 1681h. To qualify as a CRA, the company must regularly assemble or evaluate "*consumer credit information* or other information *on consumers* for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f) (emphasis added). Southwest takes the position that it is not a CRA subject to the FCRA, at least because it reports on properties, not consumers. (Doc. No. 47, at 11-17). Stated another way, Southwest asserts that its current owner reports are nothing

more than abbreviated property title searches that banks use to determine the status of property pledged as collateral for, e.g., a HELOC or second mortgage.

Southwest's interpretation is objectively reasonable, given the format of the Fuges report and the nature of the information therein. As discussed *supra*, the Fuges report contains four (4) sections: Deeds; Mortgages; Parcel Number and Taxes; and Lien Information. These four subjects more closely relate to a particular parcel of property than to a particular consumer. Additionally, the Southwest report does not contain Fuges' social security number, payment history on various debts, or previous addresses, all of which one might expect to see on a typical credit report from a CRA. (Doc. Nos. 47 and 52, ¶¶ 41, 43). Finally, we have reviewed the legislative history of the FCRA, and we cannot find any clear manifestation of congressional intent to include companies such as Southwest within the FCRA's ambit. See S. Rep. No. 91-517 (1969). Thus, Southwest's reading of the FCRA's CRA definition, i.e., that Southwest's reports are "on properties," not "on consumers," and therefore Southwest is not a CRA, has a foundation in the statutory text, which suggests that Southwest acted reasonably, not recklessly, with respect to the FCRA. See Safeco, 551 U.S. at 69-70.

Second, the absolute lack of judicial or agency guidance regarding whether the FCRA covers companies such as Southwest astounds us. The parties have not directed us to a single judicial decision, federal or state, trial court or appellate, holding that the FCRA applies to either (1) a company like Southwest that sells so-called "current owner reports," or (2) title search companies that generate more comprehensive reports on particular parcels of property upon which lenders rely in evaluating mortgage applications. Likewise, our own research has not uncovered a single case on-point. Similarly, the parties have not pointed us to any authoritative FTC guidance on the issue at hand, nor have we discovered any such guidance through our

independent research efforts. In fact, the FTC recently released a report entitled "40 Years of Experience with the Fair Credit Reporting Act" that summarizes the FTC's interpretations of the FCRA, and the report does not discuss whether the Act covers companies such as Southwest. See  http://www.ftc.gov/os/2011/07/110720fcrareport.pdf (July 2011).[2]

As in Safeco, the Defendant here reasonably interpreted the FCRA in the face of "less-than-pellucid" statutory text and an absolute dearth of judicial or agency guidance regarding whether the FCRA covers its activities. Therefore, as a matter of law, no reasonable jury could conclude that Southwest recklessly, and therefore willfully, violated the FCRA. As such, Southwest is entitled to summary judgment on Fuges' willful noncompliance claims, the only claims remaining in this matter.

Attempting to avoid summary judgment, Fuges argues that she has "proffered a detailed record of not only reckless, but deliberate and intentional non-compliant conduct by Southwest." (Doc. No. 53-2, at 27). To support this position, Fuges points out that Southwest deliberately chooses not to comply with various FCRA requirements. However, the Supreme Court's Safeco decision foreclosed this line of reasoning, holding that a company's subjective "bad faith" does not establish a willful FCRA violation, as long as the company's reading of the FCRA is objectively reasonable. See Safeco, 551 U.S. at 70 n.20 (declaring that "[w]here, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator. Congress could not have intended such

---

[2]The FTC document suggests that preparing a report based on publically available information such as criminal records constitutes "assembling" under the FCRA's definition of a CRA. Id., at 29. Although this establishes the FTC's belief that the FCRA does not categorically exclude companies that assemble and sell public records information on consumers, it *does not* shed light on whether Southwest's current owner reports, or analogous products created by similar companies, are "on consumers" for FCRA purposes.

a result for those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been.").

Fuges also cites the Third Circuit's post-Safeco opinion in Cortez v. Trans Union, LLC, 617 F.3d 688, 707 (3d Cir. 2010), to establish that "it is not an excuse or defense to an FCRA willfulness claim for a defendant to state that it believed that its product was not subject to the FCRA when that product clearly falls within the definition of 'consumer report.'" Perhaps, but that is not the situation facing us here. First, Cortez involved a suit against Trans Union, LLC, one of the "big three" credit bureaus. Id. at 721-23. No one disputes that the "big three" qualify as "consumer reporting agencies" and are therefore covered by the FCRA. As such, the Third Circuit in Cortez merely addressed whether the OFAC information reported by Trans Union, undisputedly a CRA, constituted an FCRA-covered "consumer report." See id. In that vein, the Cortez court determined that "[t]he record clearly supports the jury's reasoned determination that Trans Union was not 'merely careless' in failing to recognize that the FCRA governed the OFAC information it was reporting." Id. at 722. By contrast, Southwest disputes not only that its current owner reports fall within the FCRA's definition of "consumer reports," but also that it even qualifies as a "consumer reporting agency" in the first place. This adds an additional layer of interpretive complexity not present in Cortez.

Second, unlike the matter before us, Cortez did not involve a "borderline case of liability"; rather, the Third Circuit concluded that the "statute is far too clear" with respect to Trans Union's challenged activity to allow Trans Union to escape liability for willfully violating the FCRA. Cortez, 617 F.3d at 722. Conversely, as discussed *supra*, the FCRA is far from clear regarding its applicability to Defendant Southwest Financial Services and other like companies.

The complete absence of any pertinent judicial, legislative, or agency guidance reinforces this conclusion.

To finish, we emphasize the narrow scope of our decision. In resolving Southwest's summary judgment motion, we determine only that a reasonable jury could not conclude that Southwest *willfully*, i.e., *knowingly or recklessly*, violated the FCRA, because Southwest reasonably interpreted its activities to fall outside the scope of the Act, in light of the less-than-clear statutory text and absence of meaningful judicial or FTC guidance. We need not, and do not, decide whether Southwest's business model, including its current owner report on Fuges, falls within the FCRA's sphere. Relatedly, we do not decide whether a reasonable jury could find that Southwest, in fact, violated Ms. Fuges' rights under the FCRA. Again, we hold only that, as a matter of law, Southwest did not willfully violate the Act.

III.  Conclusion

For the aforementioned reasons, we grant Defendant Southwest Financial Services' summary judgment motion (Doc. No. 47). The Clerk of Court is directed to close this matter for statistical purposes.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.